IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TODD HEBERT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:21-cv-30 |
| | § | |
| | § | JURY DEMANDED |
| | § | |
| ER SENIOR MANAGEMENT AND | § | |
| OPCO ML LLC DBA | § | |
| MEADOW LAKE SENIOR LIVING | § | |
| COMMUNITY | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Todd Hebert hereby files this, his Original Complaint, complaining of Defendants ER Senior Management and Opco ML LLC dba Meadow Lake Senior Living Community for violating federal law. The causes of action and summary of claims relating thereto are addressed below:

I.     **PARTIES, VENUE AND JURISDICTION**

1. Plaintiff Todd Hebert ("Plaintiff" or "Hebert") is currently a citizen and resident of Hide A Way, Texas.

2. Defendant ER Senior Management, LLC is a Texas limited liability company which may be served by delivering the summons and complaint to its registered agent for service Scot W. O'Brien, 1445 Ross Avenue, Ste. 2400, Dallas, TX 75202. Defendant ER Opco ML, LLC is a Texas limited liability company which may be served by delivering the summons and complaint to its registered agent for service Scot W. O'Brien, 1445 Ross Avenue, Ste. 2400, Dallas, TX

75202. Defendants ER Senior Management and ER Opco ML are referred to collectively as Defendants or Meadow Lake.

3. Venue exists in this district and division as detailed in 28 U.S.C. §1391.

4. Most of the acts alleged herein occurred in Smith County, Texas.

5. This court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 & 1343.

6. Jurisdiction of this Court is invoked pursuant to Section 107(a) of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12117, which incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, providing for relief against discrimination on the basis of disability in employment.  Jurisdiction is also invoked pursuant to 29 U.S.C. §2614 which requires restoration of employment for employees who take protected family medical leave and 29 U.S.C. §2615 which prohibits interference with FMLA rights and discrimination against individuals that oppose unlawful actions in violation of the FMLA. Plaintiff requests that the Court exercise pendant jurisdiction over his state law claim for breach of contract as stated below.

7. All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with:

(a) a charge of employment discrimination (#450-2020-04125) on the basis of disability was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein.

(b) A Notification of Right to Sue was received from the EEOC on or about November 5, 2020.

(c) This Complaint has been filed within 90 days of receipt of the EEOC's Notification of Right to Sue.

8. Meadow Lake is a "person" within the meaning of § 101(7) of the ADA, 42 U.S.C. § 12111(7), and § 701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

9. Meadow Lake is engaged in an industry that affects commerce within the meaning of Section 101(7) of the ADA, 42, U.S.C. § 12111(7), and Section 701 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

10. Meadow Lake employs 15 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. § 12111(5)(A).

### III.   FACTUAL BACKGROUND

11. Plaintiff was employed as the Director of Environmental Services for Meadow Lake Senior Living in Tyler, Texas from November 15, 2014 until he was terminated as of January 31, 2020. In 2019, Plaintiff was diagnosed with Chronic inflammatory demyelinating polyradiculoneuropathy (CIDP) is a rare type of autoimmune disorder. Plaintiff disclosed to Defendants his diagnosis and his need for treatment for the disability.

12. In May 2019, Plaintiff requested approval for intermittent FMLA at the request of the Executive Director, Dan Hubbard. The serious medical condition which supported Plaintiff's request for protected leave was his CIDP. Plaintiff complied with his request because at the time he was receiving infusion treatments for his CIDP that required him be off work for one day a week. However, during the infusion treatments Plaintiff was available by phone and able to respond to requests and direct his staff. Plaintiff was told that he had to start using paid time off and complete the request for FMLA. Plaintiff answered calls from Mr. Hubbard and other staff as well as residents and provided direction to clear work orders and was available as needed during the infusion treatments.

13. Based on the job description provided by Meadow Lake, Plaintiff was permitted the accommodations of using a walking cane and the use of a personal electric scooter to travel

from building to building because of muscle fatigue and gait disturbance. With these accommodations Plaintiff was able to perform the essential functions of his job description. The accommodations were approved by Dan Hubbard and the Regional Vice President, David Henderson.

14. In August 2019, Plaintiff took extended, protected FMLA leave to receive intensive in-patient therapy focusing on Occupational and Physical Therapy at Christus Mother Frances Rehabilitation Hospital (Encompass Health). Plaintiff was admitted on August 16 and discharged on August 25, 2019.

15. During Plaintiff's FMLA leave in August, 2019, Dan Hubbard was replaced by William Himes as Executive Director at Meadow Lake. During Plaintiff's leave, at the direction of the owners, Himes had interviewed replacements for Plaintiff.

16. Plaintiff returned to work after his leave and continued his job responsibilities and continued to perform the essential functions of his job description. In 2019 Plaintiff received a high rating during his annual evaluation and received approximately a 4% merit increase just as he had in each of the five years.

17. After Plaintiff returned to work in the fall of 2019, he began to be excluded from communication with the Executive Director/Administrator. Plaintiff was not involved in the day-to-day activities of which he had previously been a part. Plaintiff continued directing his staff and fulfilling the requirements of his job description – including filling in as night security guard as needed. However, Plaintiff was no longer allowed to interview replacements for vacated positions. Additionally, Plaintiff's calls to Terry Dowden, the new Executive Director were unanswered, and all communication went to Plaintiff's assistant, Maria Hernandez. As Ms. Dowden transitioned into her new position as executive director, she denied communication with Plaintiff. No explanation was given. Plaintiff expressed concern to the HR Director as well as the corporate

representative that he was no longer receiving communication necessary to do his job and that Dowden was creating a hostile work environment for him. No steps were taken to remedy the situation.

18.     In December 2019, Terry Dowden notified Plaintiff that his employment had been terminated effective January 31, 2020. Plaintiff was given no reason for the termination other than there was a "decision to part ways." Plaintiff was presented with a separation agreement which he refused to sign.

19.     Part of Plaintiff's compensation package included a "Key Leadership Incentive Compensation Memorandum" dated May 1, 2018 which entitled Plaintiff to a $15,000 bonus if certain criteria were met. The memorandum had never been revoked prior to Plaintiff's termination. Plaintiff met all of the criteria to qualify to the incentive bonus in 2019, but Defendant's have failed to pay Plaintiff the incentive bonus.

## IV.     CAUSES OF ACTION

## AMERICANS WITH DISABILITIES ACT

20.     Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 19 as if fully stated herein.

21.     From the time of Plaintiff's diagnosis for CIDP, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2).  More particularly, Plaintiff has a physical impairment that substantially limits one or more of his major life activities, has a record of such an impairment, and was regarded by Meadow Lake as having such an impairment.

22.     Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8).  More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of his job as Director of

Environmental Services for Meadow Lake Senior Living.

23. Meadow Lake terminated Plaintiff because of his actual or perceived disability in violation of the ADA.

24. The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect his employment status as an individual with a disability within the meaning of the ADA.

25. The unlawful employment practices complained of above were willful within the meaning of Section 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), as incorporated by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

26. The unlawful employment practices described above were intentional and were committed with malice or with reckless indifference to the federally protected civil rights of Plaintiff.

## FAMILY MEDICAL LEAVE ACT VIOLATION

27. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 26 as if fully stated herein.

28. Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et. seq.

29. Defendant is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

30. During the time that Plaintiff was employed by Defendant, in 2019, he was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2).

31. While Plaintiff was employed by Defendant, Plaintiff had an illness that can be defined as a "serious health condition" under the FMLA as outlined in 29 U.S.C. § 2611(11).

32. Plaintiff was entitled to medical leave for his own serious health condition as provided for in the FMLA (in 29 U.S.C. § 2612(a)(1)(C)).

33. Defendant terminated Plaintiff's employment in violation of 29 U.S.C. §2615(a) for taking this medical leave.

34. Plaintiff also requests reasonable attorney's fees and court costs.

## BREACH OF CONTRACT

35. As of December 31, 2019, Plaintiff had earned a bonus in the amount of $15,000 under his compensation package. Plaintiff's entitlement to the bonus was fixed as of December 31, 2019. Plaintiff was terminated on January 31, 2020, but Defendants have refused to pay the earned bonus.

36. Plaintiff claims that Defendants have breached their agreement to pay him the $15,000 bonus.

37. Plaintiff seeks recovery of reasonable and necessary attorney's fees incurred in the collection of the bonus.

## V.   DAMAGES

38. As a direct and proximate result of Meadow Lake's discrimination on the basis of disability and violation of the ADA, FMLA and for breach of contract, Plaintiff has suffered lost wages and benefits and lost employment opportunities.

39. Defendant's denial of employment to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses for lost wages and benefits, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

40. Defendant intentionally inflicted extreme emotional distress upon Plaintiff by intentionally discharging Plaintiff on the basis of his disability. Plaintiff has suffered extreme emotional distress, embarrassment, severe disappointment, indignation, shame, despair, and public humiliation due to Defendant's discharge of Plaintiff.

41. As a result of Defendants' violations of the FMLA, Plaintiff has suffered actual

damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial.

42. As a result of this willful violation of the FMLA, Plaintiff requests that he be awarded all damages, to which he is entitled, as outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of the violation, plus interest. In addition, Plaintiff requests liquidated damages equal to the amount of reimbursable compensation described above. Plaintiff also requests any additional equitable relief to which he is entitled.

43. Plaintiff is entitled to recover his reasonable and necessary attorney's fees and court costs pursuant to 42 U.S.C. § 2000e, 29 U.S.C. §2617 and Chapter 38 of the Texas Civil Practice and Remedies Code.

## VI.   JURY DEMAND

44. Plaintiff requests trial by jury on all claims.

## VII.   PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendants as follows:

a. Judgment against Defendants for Plaintiff's actual damages, including lost wages and benefits (both back pay and front pay), in amount to be determined;

b. Judgment against Defendants for Plaintiff's compensatory damages in an amount to be determined;

c. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

d. Costs of suit, including attorney's fees;

e. The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
Hommel Law Firm
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100 Telephone/Facsimile

ATTORNEY FOR PLAINTIFF